UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

MAYIMBA MUSIC, INC.,

                       Plaintiff,

      -against-

SONY CORPORATION OF AMERICA, SONY
MUSIC ENTERTAINMENT, SONY/ATV LATIN
MUSIC PUBLISHING LLC, SONY/ATV
DISCOS MUSIC PUBLISHING LLC, and
SONY/ATV TUNES LLC,

                      Defendants.

------------------------------------------------------------- x

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW AFTER
TRIAL OF LIABILITY ISSUES**

12 Civ. 1094 (AKH)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/19/14

ALVIN K. HELLERSTEIN, U.S.D.J.:

      On June 17, 18, 23, 24, 25, 26 and 30, and July, 1, 2, 3, and 14, 2014, the parties

appeared before me for a bench trial concerning the liability issues in Plaintiff Mayimba Music,

Inc.'s copyright claim against Defendants Sony Corporation of America, Sony Music

Entertainment, Sony/ATV Latin Music Publishing LLC, Sony/ATV Discos Music Publishing

LLC and Sony/ATV Tunes LLC (together, "the Sony Defendants"). I listened to the testimony,

carefully considered the evidence, and delivered a tentative précis of my findings of fact and

conclusions of law at the end of trial.[1] Following that précis, the evidentiary record remained

closed, but the parties submitted additional post-trial briefing.

      These written findings of fact and conclusions of law constitute my decision.

---

[1]    My findings of fact are also based on the facts admitted in Sony's answer. *See Gibbs ex
rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2013) ("Facts admitted in an
answer, as in any pleading, are judicial admissions that bind the defendant throughout this
litigation.").

## FINDINGS OF FACT

### A. The Parties

1.     Plaintiff Mayimba Music Inc. ("Mayimba") is a New York corporation that maintains its principal offices in New York, New York.

2.     Sony Corporation of America ("SCA") is a corporation organized and existing under the laws of the State of New York with principal offices at 550 Madison Avenue, New York, New York 10022-3211.  Complaint (Doc. No. 1) at ¶ 2; Answer (Doc. No. 4) at ¶ 3.

3.     Sony Music Entertainment ("SME") is a corporation that maintains its principal offices at 550 Madison Avenue, New York, New York 10022-3211.  Complaint (Doc. No. 1) at ¶ 3; Answer (Doc. No. 4) at ¶ 4.

4.     Sony/ATV Latin Music Publishing LLC ("Sony/ATV Latin") is a Delaware limited liability company, is qualified to do business in New York, and maintains an office at 550 Madison Avenue, New York, New York 10022-3211.  Complaint (Doc. No. 1) at ¶ 4; Answer (Doc. No. 4) at ¶ 5.

5.     Sony/ATV Discos Music Publishing LLC ("Sony/ATV Discos") is a Delaware limited liability company, is qualified to do business in New York, and maintains an office at 550 Madison Avenue, New York, New York 10022-3211.  Complaint (Doc. No. 1) at ¶ 5; Answer (Doc. No. 4) at ¶ 6.

6.     Sony/ATV Tunes LLC ("Sony/ATV Tunes") is a Delaware limited liability company, is qualified to do business in New York, and maintains an office at 550 Madison Avenue, New York, New York 10022-3211.  Complaint (Doc. No. 1) at ¶ 6; Answer (Doc. No. 4) at ¶ 7.

### B. Ramon Arias Vasquez composes "Loca con su Tiguere"

7.     Ramon Arias Vasquez ("Arias") is a songwriter who was born in 1977 in the Dominican Republic.  **Tr. 23:2 – 27:9**.  He has written between 50 and 100 songs.  His songs have been

2

performed by Dominican singers, such as Bobby Rafael La Bobina who sang Arias' song "Traeme El Amor."

8.     Arias testified that between 1996 and 1998, he composed his song "Loca con su Tiguere" (the "Arias Composition"). **Tr. 33:5**. The title of the song translates as "Crazy with (about) her Tiguere." "Tiguere" is a Dominican slang word for a street tough, popular with women. *See* **Ex. 244** (definition of "Tiguere").

9.     Arias testified that he began writing the song in 1996, inspired by his elder sister Janette's relationship with her boyfriend, who was considered a Tiguere, and with a suitor from a wealthier family. **Tr. 30:17, 96:21, 535:17 – 537:19**. Arias' version of the song Loca con su Tiguere describes a similar love triangle, between a woman and a Tiguere, whom she preferred over the man from the wealthier family. He testified that he used the words "Loca con su Tiguere" in his song because his mother had used these words to describe Janette. **Tr. 536:16 - 537:19.**

10.    Arias testified that he completed writing the song in 1998. **Tr. 33:5, 96:14 – 98:4**. After he finished writing the song, in 1998, he wrote down the lyrics in a notebook. But the notebook was lost or destroyed, along with all of Arias' possessions, by flooding in Santo Domingo, Dominican Republic.

11.    Arias testified that in 1998, the singer known as "Aramis" in the Dominican group known as Joan Rabioso y Colletion, sang Arias' version of Loca con su Tiguere in a recording studio. **Tr. 49:17 – 51:3**. Their version of the song was recorded onto a cassette tape, which was admitted into evidence as **Ex. 101**.

12.    Juan Pablo West Smith has confirmed this. He testified that, in 1998 he (Smith) was a sound technician and Aramis and Arias asked him to do some pre-production work on Arias' song. **Tr. 119:21 – 128:21** (testimony of Juan Pablo West Smith), **188:17 – 192:15** (testimony of Arias). Specifically, Aramis and Arias asked Smith, using a computer program, to add a musical rhythm to a CD on which was recorded Arias singing the song. The track that Smith made, Arias singing Loca con su Tiguere, with rhythms added by Smith, was admitted into

3

evidence as **Ex. 108**.  That track was used as the basis for the 1998 cassette tape on which Loca con su Tiguere was recorded.

13.     Arias sang his version of Loca con su Tiguere in Court, beating out a rhythm as he sang his words.

14.     The lyrics to the Arias Composition were originally written in Spanish.  **Tr. 97:8 – 98:10**. The Spanish language lyrics to the song are:

> Y tu sabes quien llego Colesio Rabioso
> ¡Gozalo!
> Miñongo y Joan
>
> Ella e' loca con su tiguere
> Loca loca loca     4x
>
> Ella está pa mi y pa ti no no
> Tú ke da de to' y yo ni un kiki
>
> Ella e' loca con su tiguere
> Loca loca loca     4x
>
> Ella vive bajo aire
> Y se da Bueno resort
> Vive en un casón con piscine y de to'
> Mi casa es de cin y
> Y se mojacuando llueve
> Tieno bueno' traje'
> Yo siempre ando en tenis
> Ella anda bajo aire yo bajo el solazo
> Ella bebe champaña y yo mabi en jarro
> Ella es loca conmigo y no come cuenta
> Ando en un motoconcho y trabajo cement
>
> (Y tu sabes quien llego Colesio Rabioso
> ¡Gozalo!
> Miñongo y Joan)
>
> Ella e' loca con su tiguere

Loca loca loca    4x

Ella está pa mi y pa ti no no
Tú ke da de to' y yo ni un kiki

**Ex. 237.**

15.      The English translation of those lyrics is:[2]

And you know who arrived Colesio Rabioso
¡Gozalo![3]
Miñongo and Joan

She's crazy about her *tiguere*
Crazy crazy crazy 4x

She's for me and not for you no
You give her everything and I not even a dime 2x

She lives with [air conditioning]
And goes to good resorts
She lives in a mansion with pool and all
My house is made of tin and
And gets wet when it rains
She's got fine dresses
I always wear my sneakers
She walks under AC and I under the strong sun
She drinks champagne and I "mabi" out of a mug
She's crazy about me and can't be fooled
I drive a "motoconcho"[4] and work cement

(And you know who arrived Colesio Rabioso
¡Gozalo!
Miñongo and Joan)

---

[2] The English translation of the Spanish songs set out in paragraphs 14, 26 and 40 were provided by the attorneys and admitted into evidence on consent.

[3] "Have a good time"

[4] Dirt bike, moped.

She's crazy about her *tiguere*
Crazy crazy crazy 4x

She's for me and not for you no
You give her everything and I not even a dime 2x

**Ex. 237A.**[5]

16.     There was no evidence that the 1998 cassette tape featuring the Arias Composition was distributed in the Dominican Republic.

*C. Ownership of Arias' Version of "Loca con su Tiguere"*

17.     In August and October 2008, Arias entered into two agreements with J&N Publishing LLC ("J&N"), a company based in Miami, Florida. **Tr. 292:23-25 (Arias Testimony); Exs. 103, 103A, 104, 104A.** The agreements provide, *inter alia*, that J&N would have (a) ownership of Arias' song Loca con su Tiguere, (b) exclusive rights to protect, exploit and register that song, (c) rights to publication and control of the song, (d) the exclusive right to license the song, (e) the exclusive right to collect, receive and administer royalties, and (f) the right to 50% of the royalties of the song.

18.     In 2008, after buying the rights to Loca con su Tiguere from Arias, J&N filed a claim that Arias had written Loca con su Tiguere with the American Society of Composers, Authors and Publishers ("ASCAP"), a music licensing organization dealing with performance rights and royalty shares. **Tr. 230:5 - 234:9** (testimony of Luis Fernando Batista).

19.     On May 20, 2011, ASCAP notified a company (not identified) affiliated with the Sony Defendants that J&N had filed a claim to the song. **Exs. 118, 119, 120.** Both the company affiliated with the Sony Defendants and J&N asserted ownership of the song. **Exs. 119 and 120.** As a result of the dispute over who owned Loca con su Tiguere, ASCAP suspended distributions of royalties. **Tr. 234:18 – 237:5** (testimony of Luis Fernando Batista).

---

[5]      The English translations here and in subsequent paragraphs were submitted by the parties on consent.

6

20.     In November 2011, Mayimba, acting on behalf of J&N in anticipation of the agreement made in January 2012, registered a copy of Arias' 1998 composition of Loca con su Tiguere with the United States Copyright Office. **Tr. 1010:9 – 1012-22** (testimony of Marti Cuevas)**; Exs. 240, 246, 247.** The copyright was registered as an unpublished song.  The song registered with the copyright office was a copy of Arias' composition taken from the 1998 cassette tape that was admitted into the record as **Ex. 101**.

21.     In January 2012, J&N and Mayimba entered into a written agreement, titled "Subpublishing and Administration Agreement" regarding Arias' song Loca con su Tiguere. **Ex. 109**.[6]  The Subpublishing and Administration Agreement was executed on January 9, 2012.  It is effective for a Term which lasts one year commencing on the date of execution, and which is automatically extended year-to-year unless J&N notifies Mayimba of its intent to terminate.  § 1(3), 9, 11.  After the original one year term, J&N may terminate the agreement at any time by providing written notice to Mayimba.  § 11.  To date, J&N has not terminated the agreement.

22.     During the Term of the Subpublishing and Administration Agreement, Mayimba has the worldwide "exclusive right[], on a retroactive basis," to publish every song in which J&N has a right or interest.  Section 2 provides that this "exclusive right[]" includes,

> (a) [a]ll rights of publication, control, printing, broadcasting and performance (excluding so-called 'Grand Rights' and subject always to the right of the relevant performing rights societies), mechanical and other reproduction (including without limitation, all kinds of videograms), synchronization (providing such synchronization uses originate inside the Territory), sale, use, loan to public and other exploitation.  Notwithstanding, the right to make literary and/or dramatic version of any of the Compositions shall be reserved to the own.

> (a) (i) With respect to synchronization requests, [Mayimba] will advise [J&N] in writing of the nature of each such negotiation and terms will be decided upon based on mutual accord.

> (b) The right to make, subject to [J&N's] approval not to be

---

[6]     The agreement refers in error to J&N Records LLC, but was signed by J&N Publishing LLC (J&N).  I find, based on the testimony of Marti Cuevas, who prepared the agreement, that the reference to J&N Records LLC was a mistake and that the agreement was between Mayimba and J&N.

unreasonably withheld, and or license the rights to third parties to make, arrangements, adaptations and translations of the Compositions. Notwithstanding, any such arrangement, adaptation and/or translation prepared by [J&N], or [J&N's] licensees hereunder shall be considered a derivative version of the original Compositions and the copyright thereto shall be owned and controlled by [J&N] as if it were the original Composition.

(c) The exclusive and retroactive right to collect and receive any and all fees, royalties and monies (including, where applicable, phonographic performance fees in respect of television and radio broadcast, but excluding the wrtiers share of public performance fess if such rights have been granted to any performance rights society), accruing or earned in respect of the Compositions during the Rights Period and prior thereto, irrespective of when paid;

(d) The right to use and to permit others to use, the name of [J&N] and the names and photographs, likeness, autograph facsimiles and biographical materials of the writers/composers of the compositions for the purposes of trade or otherwise in connection with the Compositions or in publicity for [Mayimba];

(e) The right to exercise all other rights of whatsoever nature in respect of the Compositions whether now existing or hereafter created and not specifically referred to herein and to use and exploit the same in and by means of existing, new or undiscovered methods; Notwithstanding the aforesaid, granting of any downloadable, liquid audio or other such related Internet rights shall require the written approval of [J&N].

(f) Upon written approval from [J&N], not to be unreasonably withheld, the right to license or assign to any third party or to authorize or permit any third party (including any affiliate of [Mayimba] to exercise in the Territoty all or any of the rights in the Compositions referred to herein.

### E. Bello's Version of Loca con su Tiguere

23.    In the summer of 2007, a version of the song Loca con su Tiguere, sung by the singer Eduard Edwin Bello Pou ("Bello"), who is also known by the stage name El Cata, became popular in the Dominican Republic.

8

24.     Bello's version of the song was distributed on the music compilation album Merengue
Urbano, **Ex. 142**, and on Bello's album El Malo, **Ex. 141**.

25.  Bello's version of the song used the following Spanish lyrics:

Ella 'ta por mi y por ti borro
Y eso que tu tiene to' y yo ni un kiki

Ella 'ta por mi y por ti borro
Y eso que tu tiene to' y yo ni un kiki

Tu rueda en un BM to' la vaina con de to',
vive en un casón con picina en el millón,
come de lo bueno, viste de lo caro,
Joven empresario que fuma buen Habano,
Mi casa e de sin y me mojo cuando llueve,
Si me tiro pa' lo' Mina' me quedo en el nueve,
Luchi con el billard y mafu cuando empeño,
Manlleo si e' que jayo y si no hay 'toy feo,
Tú apuesta a la carrera y practica al polo,
Yo apuesto al ma' jodi'o y siempre ando en bolo,
Tu rueda bajo aire, yo bajo el solazo,
Tu bebe periñon y yo bebo agua en jarro,

Ella e' loca con su tiguere,
Loca loca loca
Ella e' loca con su tiguere,
Tu suave

Ella e' loca con su tiguere,
Loca loca loca
Ella e' loca con su tiguere,
Me tiene sultio

Ella 'ta por mi y por ti borro
Y eso que tu tiene to' y yo ni un kiki
Ella 'ta por mi y por ti borro
Y eso que tu tiene to' y yo ni un kiki

Tú la saca a casa 'e campo

9

Yo la llevo a Boca Chica,
Tú la baja a cabaré
Yo la e'tallo en La Matica

Tú le rueda a Tony Romo, y le ga'ta un billetón,
Yo la invito a Villa Mella y la harto e chicharrón

Ella e' loca con su tiguere,
Loca loca loca
Ella e' loca con su tiguere,
(loca con su tiguere)

Ella 'ta por mi y por ti borro
Y eso que tu tiene to' y yo ni un kiki
Ella 'ta por mi y por ti borro...

música............... tú ta chári con mily

Ella 'ta por mi y por ti borro
Y eso que tu tiene to' y yo ni un kiki
Ella 'ta por mi y por ti borro
Y eso que tu tiene to' y yo ni un kiki

Tú viaja pa lo USA y te da bueno Resort,
Yo viajo si pa Herrera y me doy mi chapusón
Tú tiene to' manga'o sin embargo te den borra,
El nueve 'ta por mí porque tengo pila e cotorra

Ella e' loca con su tiguere,
Loca loca loca
Ella e' loca con su tiguere,
(Loca con su tiguere)

Ella 'ta por mi y por ti borró
Y eso que tú tiene to' y yo ni un kiki

**Ex. 233.**

26. The English translation of those lyrics is as follows:

She's for me and for you forgotten
Even though you've got everything and I ain't got a dime

She's for me and for you forgotten
Even though you've got everything and I ain't got a dime

You drive a BMW all the stuff with everything,
You live in a mansion with swimming pool in the Million,
You eat good food, wear expensive clothes,
A young businessman who smokes good Habano (cigar),
My house is made of tin and I get wet when it rains,
If I head for Los Mina I stay in "el nueve" (a particular bus stop),
"Luchi" [money] with pool and smoke (mafu is "fumar" backward) [infers marijuana]
when I feel like it,
I "mangia" [eat] if I find some and if there's none I'm in bad shape
You bet on the race and play polo,
I bet on who's worst off and I'm in shorts,
You drink Perignon and I drink water out of a jug,

She's crazy about "tiguere"
Crazy crazy crazy
She's crazy about "tiguere"
You smooth

She's crazy about "tiguere"
Crazy crazy crazy
She's crazy about "tiguere"
She has me satisfied

She's for me and for you forgotten
Even though you've got everything and I ain't got a dime

She's for me and for you forgotten
Even though you've got everything and I ain't got a dime

You take her out to the country house
I take her to Boca Chica,
You take her down to the cabaret
And I do her in La Matica

11

You drive her to Tony Romo, and spend a big note on her,
I invite her to Villa Mella and stuff her with "chicharrón[7]"

She's crazy about "tiguere"
Crazy crazy crazy
She's crazy about "tiguere"
(crazy about her "tiguere")

She's for me and for you forgotten
Even though you've got everything and I ain't got a dime
She's for me and for you forgotten...
Music..............you're "chari" with "mily"

She's for me and for you forgotten
Even though you've got everything and I ain't got a dime
She's for me and for you forgotten
Even though you've got everything and I ain't got a dime

You travel to the USA and enjoy good Resort,
I travel yes to Herrera and I go for a dip
You're supposed to be the man but that girls is after me
Because I do it right and have game

She's crazy about "tiguere"
Crazy crazy crazy
She's crazy about "tiguere"
(crazy about her "tiguere")

She's for me and for you forgotten
Even though you've got everything and I ain't got a dime

**Ex. 233A.**

27.    The album *El Malo* also contains a version of Bello's Loca con su Tiguere which was
remixed by other artists. **Ex. 141.**

---

[7]      Fried Pork Rinds

28.     Sony/ATV Discos distributed Bello's song Loca con su Tiguere.  The extent of that distribution will be addressed in the damages portion of this trial.  *See* **Answer** (Doc. No. 4) at ¶¶ 58, 65 (admitting that "Sony/ATV Discos has [] exploited the musical composition "Loca con su Tiguere", which appears on the album *Urban Merengue, Vol. 1.*"), ¶ 59  (admitting that "Sony/ATV Discos has [] exploited the musical composition 'Loca con su Tiguere'"), ¶ 66 (admitting "that Sony/ATV Discos has [] exploited its interest in the musical composition entitled 'Loca con su Tiguere'").  The extent of that exploitation will be addressed in the damages portion of this trial.

### F. Conflicting Stories

29.     Arias claims that Bello's version of Loca con su Tiguere was a copy of Arias' Loca con su Tiguere.

30.     Arias testified that in 2006 or 2007, he met Bello in Santo Domingo, in front of a rehearsal studio, a place frequented by songwriters seeking to interest performers to sing songs written by the songwriters.  **Tr. 77:6 – 79:3**.  Arias testified that he was standing outside of the rehearsal studio with a friend, talking about songs that Arias had written, when the friend noticed Bello and suggested that Arias sing his songs to Bello.

31.     Arias testified that he sang two songs to Bello.  **Tr. 80:24 – 83:8**.  The first song, Bello was not interested in.  But Bello liked the second song, which was Loca con su Tiguere.  Arias sang the song to Bello two or three times.  Arias testified that he leaned into the open door of the jeep that Bello was sitting in, and sang his version of Loca con su Tiguere and that Bello recorded it on a small recording device.  Bello then said that the song was "good," and asked Arias to come and record it.

32.     Bello denies that this meeting happened.  Bello testified that Loca con su Tiguere was his song, and that the song that made him famous.  **Tr. 995:15 – 996:3**.

13

33.     Bello testified that he wrote the song Loca con su Tiguere himself between January and July 2007. **Tr. 808:5 – 8:19-20**. He testified that he wrote the song—which has a reference to rain falling on a tin roof—while staying at his step-father's house, which had a tin roof. He further testified that the song was inspired by his relationship with his ex-wife: she was from a wealthy background, whereas he was from a poor background. He testified that he did not consider himself a Tiguere, but that in the song he identified as a Tiguere in order to cultivate an image with the public. **Tr. 870:21**.

34.     On cross-examination, Bello admitted that in public interviews he had given a different account of how he came to write Loca con su Tiguere. **Tr. 974:24 – 981:20**. He told the public that his manager gave him the phrase "Loca con su Tiguere," which he used in his song. He testified that he invented this story because he wanted to keep his private life private. Since Bello had cultivated a public image as a Tiguere, popular with women, I do not find his explanation credible.

35.     Between late 2010 and the end of 2011, Arias and Bello had a series of conversations and meetings about their conflicting claims to have written Loca con su Tiguere. **Tr. 311:5 – 316:25; 496:11 – 503:8; 586:18 – 588:24; 664:23 – 666:21; 838:25 – 847:18; 856:12 – 858:15; 873:20 – 875:12**. The record is unclear about who intiaited these conversations. However, both Arias and Bello testified that they used their discussions to put off the other. Arias testified that he told Bello that he would sign away his rights to the song, in return for money and a percentage of royalties. **Tr. 313:25 - 316:20**. Bello testified that he told Arias that he would give him money if Arias renounced his claim to have written the song, but that he never intended to pay Arias. **Tr. 845:7 - 847:18**. These discussions and deceptions culminated in Bello, at the behest of an attorney affiliated with the Sony Defendants in Florida, asking Arias to sign two documents in which he quit his claim to own the song: an English language contract, dated June 15, 2011, **Ex. A**, and a notarized declaration, dated April 6, 2011, **Ex. B**. In return for signing these documents, Arias received a small payment, which essentially covered his expenses.

36.     I find Arias' account credible, and Bello's account not credible . Arias' claim that he wrote his version of Loca con su Tiguere in 1998 is supported by the 1998 cassette tape

14

recording of Aramis' version of the song (**Ex. 101**) and the testimony of Dominic West. The similarities between Arias' version of Loca con su Tiguere and Bello's version of Loca con su Tiguere, suggest that one was a copy of the other and therefore lend credibility to Arias' claim that Bello copied material parts of Arias' song. And Bello's claim that he wrote the song based on his relationship with his wife is undermined by the fact that he gave the public a different account of the origin of the key phrase of the song.

37.     The Sony Defendants argue that the fact that Arias signed the contract and declaration in 2011 (**Exs. A and B**) undermines his credibility, as these documents state that Arias did not write Loca con su Tiguere. However, I give these documents limited evidentiary weight for two reasons. First, these documents were drafted under circumstances which suggest that Arias did not carefully review them. Bello, at the behest of a lawyer from Miami affiliated with the Sony Defendants, had arranged for Arias to sign these docuthe meetings in an effort to quiet Arias' claim to ownership of the songs, and to offer money to Arias. Arias went to the meetings expecting to transfer some title to the songs to Bello in exchange for money and royalties. The contract was prepared by the lawyer from Miami and Arias, who did not have a lawyer, did not read the contract before he signed it because it was written in English. As to the notarized affidavit, Arias told the notario that he had a declaration to make and the notario prepared three written declarations for Arias' signature. As a result of a power cut in the notario's office, Arias did not read every copy of the declaration before he signed it. The declaration submitted by Defendants contains typographical errors and the wrong date. As a result of these circumstances, I am not sure that Arias carefully read the declaration before he signed it. Second, I do not believe that the language in the documents stating that Arias did not write Loca con su Tiguere is significant. At the time he signed the documents, Arias had already sold his copyright rights in Loca con su Tiguere to J&N. The fact that Arias tried to get some more money out of Bello by promising to renounce rights to the song, when he previously had assigned all his rights, does not suggest that Arias truly believed that he did not write the song; it merely suggests that Arias was trying to find a way to get some money. Rather, the lengths that Bello went to get Arias to renounce his claim that he had written Loca con su Tiguere suggest that Bello knew that Arias had written the song. *See* **Tr. 571:17 – 573:4; 675:15 – 24; 723:22 – 724:22** (testimony regarding the circumstances in which the contract and declaration were signed).

### G.    Shakira's Version of Loca con su Tiguere

38.    In the summer of 2010, the famous Colombian singer Shakira released her album Sale el
Sol. **Ex. 140**.  The album contains two songs which are versions of Bello's version of Loca con
su Tiguere.

39.    The Spanish language version of the song appears on the album as Track 2, entitled
"Loca feat. El Cata."  Bello sings portions of the song.

40.    Shakira's Spanish version of Loca contains the following lyrics:

Loca, loca
No te ponga bruto
Que te la bebe
Dance or Die...

El está por mi y por ti borró
Eso que tú tienes to'o y yo ni un kikí.
El está por mi y por ti borró
Eso que tú tienes to'o y yo ni un kikí

Ella se hace la bruta pa' cotizarse
Conmigo en frente ella se hace la gata en celo contigo
Te cotorrea al oído pa tenerte en alta
Ella muere por ti y tú por mi es que matas
Yo sigo tranquila como una paloma de esquina
Mientras ella pasa en su BM al lado mío
Yo de aquí no me voy
Lo que está pa' mi
Ninguna va a poder quitármelo de un tirón

　　　CHORUS
Yo soy loca con mi tigre
Loca loca loca

Soy loca con mi tigre
Loca loca loca
Soy loca con mi tigre
Loca loca loca
Soy Loca con mi tigre

Loca loca loca

El está por mí
Y por ti borró (borró)
Y eso que tú tienes to'
Y yo ni un Kikí

El está por mi y por ti borró
Eso que tú tienes to'o y yo ni un kikí.
El está por mi y por ti borró
Eso que tú tienes to'o y yo ni un kikí

Mientras ella te complace con todos tus caprichos
Yo te llevo al malecón por un caminito
Me dicen que tu novia anda con un rifle
Porque me vio bailando mambo pa' ti
Qué, no lo permite?
No tengo la culpa de que tú te enamores
Mientras él te compra flores
yo compro con, oh

Yo soy loca con mi tigre.
Cuanto más rayas mejor y mira eso es lo que dicen.

            CHORUS
Yo soy loca con mi tigre
Loca loca loca
Soy loca con mi tigre
Loca loca loca
Soy loca con mi tigre
Loca loca loca
Soy Loca con mi tigre
Loca loca loca
Dios mio

Se cola lo ratata
No te ponga bruto
Que te la bebe

El está por mi y por ti borró

Y eso que tu tienes to'o y yo ni un kikí

CHORUS
Yo soy loca con mi tigre
Loca loca loca
Soy loca con mi tigre
Loca loca loca

**Ex. 213.**

41.    The English translation of those lyrics is as follows:

Crazy, crazy
Don't be stupid
Drink it down
Dance or die…

He loves me and he's forgotten you
Even though you've got it all and I ain't got a dime
He loves me and he's forgotten you
Even though you've got it all and I ain't got a dime

She acts stupid to stand out
In front of me she acts like a cat in heat with you
She chats in your ear to lift you up
She's dying for you and you'd kill for me
I keep cool like a corner dove
While she passes by me in her BM
I'm not moving from here
What's meant for me
Nobody's going to snatch it from me

CHORUS
I'm crazy about my tiger
Crazy crazy crazy
I'm crazy about my tiger
Crazy crazy crazy
I'm crazy about my tiger
Crazy crazy crazy
I'm crazy about my tiger

Crazy crazy crazy

He loves me and he's forgotten you
Even though you've got it all and I ain't got a dime
He loves me and he's forgotten you
Even though you've got it all and I ain't got a dime

While she indulges your every whim
I take you to the promenade along a path
They say that your girlfriend's carrying a rifle
Because she saw me dancing mambo for you
What, she doesn't allow it?
It's not my fault that you fall in love
While he buys you flowers
I buy with, oh

CHORUS
I'm crazy about my tiger
Crazy crazy crazy
I'm crazy about my tiger
Crazy crazy crazy
I'm crazy about my tiger
Crazy crazy crazy
I'm crazy about my tiger
Crazy crazy crazy

The "ratata" sneaks in
Don't be stupid
Drink it down

He loves me and he's forgotten you
Even though you've got it all and I ain't got a dime

CHORUS
I'm crazy about my tiger
Crazy crazy crazy
I'm crazy about my tiger
Crazy crazy crazy

**Ex. 213A.**

42.     Sale el Sol also includes an English language version of the song Loca. That song was not offered into evidence.

43.     The Sony/ATV Latin and Sony/ATV Discos distributed Shakira's Spanish language version of Loca. *See* **Ex. 140** (lyrics sleeve, indicating that the album was published by *inter alia* Sony/ATV Latin); **Answer** (Doc. No. 4) at ¶ 54 (admitting that "Sony/ATV Discos has granted licenses for the use of its interest in the musical composition 'Loca'" that appears on the album *Sale el Sol*), ¶ 64 (admitting that "Sony/ATV Discos has [] exploited the musical composition entitled 'Loca' that appears on the album *Sale el Sol*."). The extent of that distribution will be addressed in the damages portion of this trial.

## CONCLUSIONS OF LAW

### A. Arias' authorship of "Loca con su Tiguere"

44.     Mayimba's copyright claim is based on Arias' authorship of "Loca con su Tiguere," and subsequent assignments to Mayimba.

45.     The Copyright Act provides that copyright protection may attach to "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). It further provides that the term "works of authorship" includes "musical works, including any accompanying words." 17 U.S.C. § 102(a)(2). Arias' composition of Loca con su Tiguere is such a musical work.

46.     To establish that Arias had a valid copyright in his version of Loca con su Tiguere, Mayimba must show that he was the author of the musical work, and that it was original. *See Billco Int'l, Inc. v. Charles Products, Inc.*, 776 F. Supp. 2d 105, 111 (D. Md. 2011).[8] Because I

---

[8]     Mayimba's registration of Loca con su Tiguere as an unpublished work means that there is no presumption that there is a valid copyright in the song. *See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 224 F. Supp. 2d 567, 595 (S.D.N.Y. 2002), *aff'd in part, rev'd in part, vacated in part on other grounds*, 380 F.3d 624 (2d.

find Arias' testimony credible, I find that Mayimba has established both. Arias is the author of Loca con su Tiguere, which he wrote between 1996 and 1998. *See* 17 U.S.C. § 201 ("Copyright in a work protected under this title vests initially in the author or authors of the work."); *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989) (generally, "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection"). And his version of Loca con su Tiguere is an original work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991) ("Original, as the term is used in copyright, means only that the work was independently created by the author . . . and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be. Originality does not signify novelty . . ." (citations and quotations omitted)).

47.     Arias therefore owned the copyright in Loca con su Tiguere before thereafter assigning it.

## B. Mayimba's Standing

48.     "The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982).[9] Section 501(b) of the Copyright Act provides that "the legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any

---

Cir. 2004) (explaining that an unpublished copyright registration does not constitute *prima facie* evidence of the validity of a copyright under 17 U.S.C. § 410(c)).

While Mayimba's registration of its copyright does not create a presumption of validity, it does satisfy a precondition to suit, that the copyright is registered. *See Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 166 (2010) (holding that 17 U.S.C. § 411(a) establishes that registration of a copyright is a necessary precondition to a copyright infringement claim).

[9]     *Eden Toys* was superceded on other grounds by Fed. R. Civ. P. 52(a). *See Russian Entm't Wholesale, Inc. v. Close-Up Int'l, Inc.*, 482 F. App'x 602, 606 (2d Cir. 2012) (unpublished).

infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

49.     In 2008, Arias transferred his copyright to J&N by written agreement. *See* **Exs. 103, 103A, 104, 104A**; *see also* 17 U.S.C. § 204(a) (providing that a transfer of copyright ownership must be made in writing).

50.     J&N and Mayimba thereafter, on Janyary 9, 2012, signed a licensing agreement. **Ex. 109**; *see* Finding of Fact ¶¶ 21-22. Mayimba claims that this licensing agreement made it an exclusive licensee of J&N's copyright interest in Loca con su Tiguere. As discussed above, only a licensee with an "exclusive right" has standing to sue. *See* 17 U.S.C. § 501(b); *Eden Toys*, 697 F.2d at 32. Thus, Mayimba must establish that it has an exclusive license to do and to authorize any of the following:

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to
> the public by sale or other transfer of ownership, or by rental,
> lease, or lending; (4) in the case of literary, musical, dramatic, and
> choreographic works, pantomimes, and motion pictures and other
> audiovisual works, to perform the copyrighted work publicly; (5)
> in the case of literary, musical, dramatic, and choreographic works,
> pantomimes, and pictorial, graphic, or sculptural works, including
> the individual images of a motion picture or other audiovisual
> work, to display the copyrighted work publicly; [or] (6) in the case
> of sound recordings, to perform the copyrighted work publicly by
> means of a digital audio transmission.

17 U.S.C. § 106 (listing the exclusive rights associated with copyright ownership); *John Wiley & Sons, Inc. v. DRK Photo*, 11 CIV. 5454 KPF, 2014 WL 684829, at *9 (S.D.N.Y. Feb. 21, 2014) ("The "exclusive rights" referenced in Section 501(b) are set out in Section 106 of the Copyright Act . . .").

51.     In determining, whether a licensee has exclusive rights and thus standing to sue, courts "look to the substance of the agreement, not the labels it uses." *Id.* at *4-5 (quotation omitted).

22

52.     In this case, section 2 of the licensing agreement provides that Mayimba has the
"exclusive right[]" to publish every song in which J&N has a right or interest, which includes
Loca con su Tiguere.  Section 2(a) of the contract provides that this "exclusive right[]" includes
"[a]ll rights of publication, control, printing, broadcasting and performance (excluding so-called
'Grand Rights' and subject always to the right of the relevant performing rights societies),
mechanical and other reproduction (including without limitation, all kinds of videograms),
synchronization (providing such synchronization uses originate inside the Territory), sale, use,
loan to public and other exploitation.  Notwithstanding, the right to make literary and/or dramatic
version of any of the Compositions shall be reserved to the own."

53.     However, while § 2(a) provides Mayimba with the exclusive right to publish Loca con su
Tiguere, other parts of the contract require that Mayimba seek J&N's approval before it can
permit others to use the song.  For example, § 2(a)(i) provides that the right to make
synchronization requests "will be decided upon based on mutual accord" between Mayimba and
J&N.  Section 2(b) provides that J&N's "approval," which is "not to be unreasonably withheld"
is necessary to make or license to third parties the right to make adaptations.  Section 2(e)
provides that "granting of any downloadable, liquid audio or other such related internet rights
shall require the written approval of [J&N]."  And § 2(f) provides that the right to license the
song to third parties requires "written approval from [J&N], not to be unreasonably withheld."

54.     The Sony Defendants argue that because Mayimba needs J&N's approval to exploit Loca
con su Tiguere in certain ways, Mayimba is not an exclusive licensee.  I am not persuaded by
this argument.  One of the core copyright rights is the right "to reproduce the copyrighted work
in copies or phonorecords."  17 U.S.C. § 106(1).  Under the licensing agreement Mayimba is the
only entity that can reproduce the copyright work.  And, Mayimba is the only entity that can
authorize someone else to reproduce the copyright work.  Under § 2(f) of the licensing
agreement, Mayimba's right to license the song to third parties is conditioned on J&N's approval
(which cannot be unreasonably withheld).  But, crucially, J&N would not be able to license the
song on its own.  Thus, since Mayimba is the only entity that can license the song, Mayimba has
the exclusive right to license the song.

23

55.     In support of their argument that Mayimba was not the exclusive licensee, the Sony Defendants rely on three cases in which courts held that licensees did not hold exclusive rights: *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377 (7th Cir. 2011), *Zenix Indus. USA, Inc. v. King Hwa Indus. Co.*, 920 F.2d 937, 1990 WL 200234 (9th Cir. 1990) (unpublished), and *Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007) *aff'd*, 388 F. App'x 721 (9th Cir. 2010). These cases are inapposite. In *HyperQuest*, the Seventh Circuit found that a license was not exclusive because the licensor had reserved for itself the right to use the copyrighted software for itself and to distribute it to third parties. 632 F.3d at 383. Here, however, J&N does not have the right to make copies of Loca con su Tiguere or to distribute it to third parties. In *Zenix Indus.*, the Ninth Circuit noted that a license to use a design would not be an exclusive license if the licensor retained the right to use the design. 1990 WL 200234 at *2-3. But, here there is no suggestion that J&N has retained the right to use Loca con su Tiguere. In *Nafal*, the Central District of California held that a licensee was not an "exclusive licensee," because the licensee's interest in the song was so limited that: the licensee could not exploit the song "absent [the licensor's] express approval" and the licensee's interest in the song could be cancelled at any time. 540 F. Supp. 2d at 1142-43. Here, however, Mayimba's interest in Loca con su Tiguere is far from the illusory interest identified in *Nafal*. Mayimba could unilaterally exploit Loca con su Tiguere—by publishing it on a CD and selling that CD—without J&N's express approval. It is the case that J&N can unilaterally terminate Mayimba's license to use the song, since the licensing agreement has been in effect for more than a year, but that unexecuted right to terminate does not make Mayimba's interest in the song illusory.

56.     Since Mayimba is an "exclusive licensee," it has standing to sue. *See Eden Toys*, 697 F.2d at 32 (2d Cir. 1982); 17 U.S.C. § 501(b).

## C. Proper Defendants

57.     At the close of evidence, the Sony Defendants moved to dismiss from the case three defendants: SCA, SME, and Sony/ATV Tunes, leaving only Sony/ATV Latin and Sony/ATV Discos in the case. That motion is granted.

58.     No evidence was presented showing that SCA, SME, or Sony/ATV Tunes were involved in the distribution of Bello's song Loca con su Tiguere or Shakira's song Loca.  Plaintiff alleged in its complaint that SCA infringed by distributing a video, CD and DVD entitled *Shakira En Vivo Desde Paris*, but no proof was offered.  *See* **Complaint** (Doc. No. 1) at ¶¶ 19-31.

59.     There was evidence at trial that Sony Music Entertainment US Latin LLC infrineged. But there was no proof offered that SME, the parent corporation, infringed.  A corporation cannot be liable for the acts of its subsidiary where there is no evidence that would support piercing the corporate veil, and there is no such evidence here.  *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929) (L. Hand, J.) ("[c]ontrol through the ownership of shares does not fuse the corporations").

60.     Mayimba argues that it did not need to introduce evidence about SCA, SME, or Sony/ATV Tunes' actions because all of the Sony Defendants may be held liable based on common law doctrines of contributory and vicarious infringement.  "One infringes contributorily by intentionally inducing or encouraging direct infringement and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citations omitted). However, Mayimba failed to offer proof of contributory or vicarious infringement.

61.     Mayimba maintains that SME, Sony/ATV Tunes and SCA are all liable as contributory and vicarious infringers because of a contract dated October 28, 2010 among Bello, Sony ATV/Discos, and Sony Discos Music Publishing LLC allowing other Sony entities to exploit Bello's version of "Loca con su Tiguere."  However, Mayimba failed to offer the contract as evidence, and failed to offer evidence showing that any of the defendants intentionally induced or encouraged the direct infringement of Plaintiff's copyright by another.  *See id.*

62.     As to the theory of vicarious infringement, there is no evidence that SME, Sony/ATV Tunes or SCA had a right to stop the infringement of the other defendants.  A parent-subsidiary relationship, standing alone, is not enough to state a claim for vicarious liability against a parent for the actions of its subsidiary.  *See, e.g., Banff Ltd. v. Ltd., Inc.*, 869 F. Supp. 1103, 1110 (S.D.N.Y. 1994) ("[T]o prevail against a parent corporation on the theory of vicarious copyright

infringement, the plaintiff must present evidence that the parent has done more in relation to the infringing activity than simply be the parent. In more precise terms, the plaintiff must show that the parent has a direct financial interest in the infringing activity, and that the parent has the right and ability to supervise the subsidiary, which is evidenced by some continuing connection between the two in regard to the infringing activity."); *Broadvision Inc. v. General Electric Co.,* No. 08 Civ. 1478, 2009 WL 1392059, at \*4 (S.D.N.Y. May 5, 2009) ("To state a claim for vicarious liability against a parent for the actions of its subsidiary, a plaintiff must show more than just a legal relationship between the parent and the subsidiary or that the parent benefits from its ownership of the subsidiary."); *Dauman v. Hallmark Card, Inc.,* No. 96 Civ. 3608, 1998 WL 54633, at \*6 (S.D.N.Y. Feb. 9, 1998) ("[A] parent corporation can be liable only if there is a substantial continuing involvement by the parent specifically with [ ] respect to the allegedly infringing activity of the subsidiary.").

63.     Accordingly, the Sony Defendants' motion to dismiss is granted and SCA, SME, and Sony/ATV Tunes are dismissed from the case. The defendants remaining are Sony/ATV Latin and Sony/ATV Discos

## D. Affirmative Defense of Laches

64.     The Sony Defendants assert the affirmative defense of laches. Laches is an equitable defense, which is normally proved by establishing that a plaintiff unjustly delayed asserting his claims and that a defendant was prejudiced as a result. *See Lego A/S v. Best-Lock Const. Toys, Inc.*, 874 F. Supp. 2d 75, 86 (D. Conn. 2012).

65.     Bello's version of Loca con su Tiguere was first published in the summer of 2007 and Shakira's Spanish language version of Loca was first published in the summer of 2010. In 2008, J&N filed a claim with ASCAP that Arias had written the song. In May 2011, ASCAP notified a company affiliated with the Sony Defendants that J&N had asserted ownership rights over Loca con su Tiguere. And in November 2011, J&N registered its copyright to Loca con su Tiguere. There is no proof of an unjust delay and no proof of any prejudice to any of the Defendants. Accordingly, the Sony Defendants' laches defense is denied.

26

## E.  Mayimba's Claim That Based on Bello's Version of Loca con su Tiguere Infringed Mayimba's Copyright

66.     Mayimba claims that the Sony Defendants infringed its copyright in Loca con su Tiguere created by Arias and assigned to it by J&N.  In order to prove its infringement claim, Mayimba must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original . . ." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  As discussed in ¶¶ 44-56, Mayimba has proved that Arias created the work and assigned his rights in it to J&N and through J&N to Mayimba.  Mayimba therefore has standing to sue.

67.     To satisfy the second element of an infringement claim, Mayimba must show by a preponderance of the evidence that there was unlawful copying.  This requires a showing of "actual copying" and that "the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." *Hamil Am., Inc. v. GFI*, 193 F3d 92, 99 (2d Cir. 1999); *Jorgensen*, 351 F.3d at 51 ("a plaintiff must show both that his work was actually copied and that the portion copied amounts to an improper or unlawful appropriation." (quotation omitted)).

### 1.  Actual Copying

68.     Actual copying may be shown by direct evidence or by indirect evidence. *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997).  Where there is no direct evidence of copying, copying is typically shown by evidence that the author of the allegedly infringing work had access to the copyrighted work and that there are similarities between the two works suggesting copying. *Id.*; *see also Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988) ("Because copiers are rarely caught red-handed, copying has traditionally been proven circumstantially by proof of access and substantial similarity.").

69.     Plaintiff proved access by Arias' testimony that he sang Loca con su Tiguere to Bello in 2006 or 2007, and that Bello recorded Arias' singing of the song.  This establishes that Bello had access to Arias' version of Loca con su Tiguere before Bello published his own version of the

27

song. *See Jorgensen*, 351 F3d at 51 (noting that access can be proved by showing that a particular chain of events exists by which the defendant might have gained access to the work). Plaintiff proved also that there are substantial similarities between Arias' song and Bello's song, proving actual copying.

## 2. The Standard for Finding Unlawful Copying

78.    Mayimba must show also that Bello's "copying is illegal because a substantial similarity exists between [Bello's] work and the protectable elements of [Arias']." *Hamil Am., Inc. v. GFI*, 193 F3d 92, 99 (2d Cir. 1999).

79.    In order to determine if there is a substantial similarity between two musical works, courts normally apply the ordinary observer test articulated by the Second Circuit in *Arnstein v. Porter*. The plaintiff must prove that "defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such ... music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff." *Repp*, 132 F.3d at 889 (quoting *Arnstein v. Porter*, 154 F.2d 464, 473 (2d Cir. 1946)).

80.    When the works at issue contain considerable elements from the public domain that are unprotectible by copyright, the usual "ordinary observer" test becomes "more discerning," and requires the Court to "attempt to extract the unprotectible elements from ... consideration and ask whether the protectible elements, standing alone, are substantially similar." *Velez v. Sony Discos*, 05 CIV. 0615 (PKC), 2007 WL 120686 (S.D.N.Y. Jan. 16, 2007).

81.    When applying the discerning observer test, the Court is not required to "dissect" the works into their separate components, and compare only those elements which are in themselves copyrightable. *See Peter F. Gaito Architecture, LLC v. Simone Development Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1003 (2d Cir. 1995)).

82.    Rather, the Court must compare the "'total concept and overall feel' of the two songs, 'as instructed by our good eyes and common sense ... focus[ing] on whether the alleged infringer has

28

misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work.'" *Edwards v. Raymond*, 13 CIV. 7985 DLC, 2014 WL 2158932, at *6 (S.D.N.Y. May 23, 2014) (quoting *Peter F. Gaito Architecture*, 602 F.3d at 66).

83.   Here, not all of Arias' composition is protectable.

84.   Copyright protection "extends only to a particular expression of an idea, and not to the idea itself." *Boisson v. Banian, Ltd*, 273 F.3d 262, 268 (2d Cir. 2001). "Themes are not independently protectable." *Edwards v. Raymond*, 13 CIV. 7985 DLC, 2014 WL 2158932, at *11 (S.D.N.Y. May 23, 2014). Accordingly, the theme to Arias' composition—the choice of a less appropriate, and the rejection of a more appropriate, suitor—is not protectable. However, Arias' expression of that theme is entitled to protection.

85.   It is well-established that "[c]ommon phrases are generally not protected by copyright." *Jean v. Bug Music, Inc.*, 00 CIV 4022 (DC), 2002 WL 287786, at *5 (S.D.N.Y. Feb. 27, 2002) (citing *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998)); *see also Edwards*, 2014 WL 2158932, at *7 (citing *Acuff-Rose Music*). In the Second Circuit's seminal decision on this point, *Acuff-Rose Music*, the Second Circuit held that the phrase "[y]ou've got to stand for something, or you'll fall for anything," could not be protected by copyright because "[t]he prior usage of the saying was sufficiently widespread as to make it exceedingly unlikely . . . that [the song's author] had . . . independently created the phrase." 155 F.3d at 144

86.   Here, there is the phrase "Crazy, crazy, crazy" is a common phrase that is not entitled to protection.

87.   The Sony Defendants also argue that "Loca con su Tiguere" is a common phrase that cannot be protected. In *Acuff-Rose*, 155 F.3d at 143-44, the court concluded that the phrase "[y]ou've got to stand for something, or you'll fall for anything" was a common phrase based on evidence in the record: "sources ascribing the origin of the phrase (or of close variants) to a variety of sources, including the Bible, Abraham Lincoln, Martin Luther King, Malcolm X, Ginger Rogers, and a chaplain of the U.S. Senate, and others that simply refer to it as an 'old saying[]'" and the fact that a popular songwriter and singer had "recorded an album that included

29

a song called You've Got to Stand for Somethin', featuring the lyrics, 'You've got to stand for somethin'/Or you're gonna fall for anything.'"

88.     However, there is no proof in this case that the phrase "Loca con su Tiguere" was commonly used in the Dominican Republic or elsewhere at the time Arias composed his song.

89.     "Tiguere" is a slang word in the Dominican Republic. But the fact that that one word in a phrase is slang does not mean that the phrase itself is necessarily so common that it cannot be copyrighted. Popular musicians have been using slang and metaphors in their songs for decades. Consider, for example, the lyrics "You're so square/baby I don't care," from a song by Buddy Holly, a popular rock musician from the 1950s. Consider also the lyrics of Cole Porter's "Night and Day," the subject of the *Arnstein v. Porter* case—"Night and day you are the one/only you beneath the moon or under the sun"—illustrating how common metaphos and language communicate a powerful message about love.

90.     Accordingly, I find that the phrase "Loca con su Tiguere" is capable of copyright protection.

### 3.  A Comparison of the Songs

91.     Here, a comparison of the protected components of the two songs indicates substantial copying.

92.     Both songs have a similar structure. Both songs are driven by two main emphases, or hooks, framing one long verse.

93.     In Arias' version, two hooks drive the song: the stanzas beginning "She's crazy about her *tiguere*" and "She's for me and not for you . . ." In Bello's version, there are the same two

30

hooks, with small variations: ub the stanzas beginning "She's crazy about her *tiguere*"[10] and "She's for me and for you forgotten."

94.     These hooks play a similar function in both songs. Similar rhythm in both hooks drive the songs. The repetitions are slightly different, byt the differences do not affect the song.

95.     I first compare the hooks beginning "Ella e' loca con su tiguere" ("She's crazy about her *tiguere*"). Arias' hook is as follows:

> Ella e' loca con su tiguere
> Loca loca loca     4x
>
> (She's crazy about her *tiguere*
> Crazy crazy crazy 4x)

Bello's hook is as follows:

> Ella e' loca con su tiguere,
> Loca loca loca
> Ella e' loca con su tiguere,
>
> (She's crazy about her *tiguere*
> Crazy crazy crazy
> She's crazy about her *tiguere*)

96.     These hooks are identical, except for variations in the number of times the different lines are repeated.

97.     I next compare the second hooks in the song. Arias' hook is as follows:

> Ella está pa mi y pa ti no no
> Tú ke da de to' y yo ni un kiki
>
> (She's for me and not for you no
> You give her everything and I not even a dime.)

---

[10]     I note that in **Ex. 233A**, Bello's line is translated as "She's crazy about 'tiguere.'" However, the Spanish words in both songs are identical; accordingly, the English translation also should be the same.

Bello's hook is as follows:

> Ella 'ta por mi y por ti borro
> Y eso que tu tiene to' y yo ni un kiki
>
> (She's for me and for you forgotten
> Even though you've got everything and I ain't got a dime.)

98.     Both hooks use similar words and similar imagery.  The first line in both hooks contrasts the singer who gets the girl (the *tiguere*), with another suitor who, although more appropriate, does not.  The second line contrasts the singer who is poor and does not have (or give to the girl) a dime, yet wins the girl, with a wealthy suitor who has (or gives to the girl) everything.

99.     The similarities between the first two lines of this hook are stronger in Spanish than in translation.  The first line of Arias' hook ends with the Spanish words "pa ti no no."  The rhythm is echoed in the first line of Bello's hook, which ends with the Spanish words "por ti borro." "Borro" rhymes with and sounds similar to "no no", and is an emphatic of "no no."  The words play the same role in the lyric, they both bring the line to an abrupt, emphatic halt.

100.    I find that Bello's song illegally copied Aruas' song's hooks, to give Bello's version the same rhythm, structure and drive as Arias' song.

101.    The songs are also structured around a long verse.  In Arias' version this verse begins "Ella vive bajo aire" ("She lives with AC").  In Bello's version, this verse begins "Tu rueda en un BM" ("You drive a BMW . . .").

102.    Both verses are structured around a comparison between a life of wealth, and the singer's life in poverty.  In Arias' song, the singer is poor, while the girl is wealthy.  In Bello's version, the singer is poor, while the suitor is wealthy.  But the imagery and many of the metaphors are the same.

103.    Arias' song contains the lyric "Mi casa es de cin y se moja cuando llueve" ("My house is made of tin and gets wet when it rains").  Bello's song contains an almost identical lyric, except that itm uses a lteral reflexive rather than an implied reflexive.  Bello's song states "Mi casa es

32

de cin y me mojo cuando llueve" ("My house is made of tin and I get wet when it rains"). The only difference between these lines in Spanish is that Arias uses "se moja" (it gets wet) and Bello uses "me mojo" (I get wet). Both lyrics are used to emphasize the singer's poverty.

104.    Arias' song contains the lyric, "Vive en un casón con piscine y de to'" ("She lives in a mansion with pool and all"), and Bello's song contains a nearly identical lyric, "Vive en un casón con picina en el millón" ("You live in a mansion with swimming pool in the Millon"). The Millon is a wealthy area of Santo Domingo. Thus, both lyrics use similar imagery of a substantial house and swimming pool to emphasize wealth.

105.    Arias' song contains the lyric, "Ella bebe champaña y yo mabi en jarro" ("She drinks champagne and I 'mabi' out of a mug") and Bello's song contains the similar lyric, "Tu bebe periñon y yo bebo agua en jarro" ("You drink Perignon and I drink water out of a mug").[11]  Both lyrics use the same imagery to contrast wealth and poverty. The change from "champagne" to "Perignon," a famous brand of champagne, and mabi to water, both to be drunk from a mug, are insignificant differences that show conscious copying.

106.    I conclude that Bello's verse is an illegal copy of Arias' verse. While Bello made changes to the verse, and created additional imagery to explore the distinctions between wealth and poverty, that is not a defense to illegal copying. As Judge Learned Hand held in *Sheldon v. Metro–Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir. 1936), "no plagiarist can excuse the wrong by showing how much of his work he did not pirate."

107.    Mayimba has proved by a preponderance of the evidence that Sony/ATV Discos infringed Mayimba's copyright based on its distribution of Bello's version of Loca con su Tiguere.

---

[11]    I note that in **Ex. 233A**, uses the word jug instead of mug. However, Bello's song uses the same Spanish words as Arias' song – "en jarro" – accordingly the English translation should be the same. Mabi is a popular drink in the Dominican Republic.

## F. Mayimba's Claim that Shakira's Spanish Version of Loca Infringed Mayimba's Copyright

108.    I next turn to Arias' claim based on Shakira's Spanish language version of Loca.

### 1. Actual Copying

109.    There is no dispute that Shakira's version of the song was based on Bello's version. Accordingly, I find that, since Bello had copied Arias, whoever wrote Shakira's version of the song also indirectly copied Arias. Thus, Arias has established actual copying. *See Jorgensen*, 351 F3d at 51 (access can be proved by showing a particular chain of events by which the defendant gained access to the original work).

### 2. Illegal Copying in Shakira's Version

110.    A comparison of the protected components of Arias' song and Shakira's Spanish language version of Loca indicates substantial copying.

111.    Shakira's version is different from Arias' version and Bello's version in several ways. Both Arias and Bello sing about a love triangle between a poor male singer, a rich male rival, and a girl. Shakira sings about a love triangle between a poor female singer (Shakira), a man, and the man's wealthy wife.

112.    Shakira's song is structurally similar to Arias' version. Both songs are driven by two main hooks, which are framed around one long verse.

113.    In Arias' version, the hooks are contained in the stanzas beginning "Ella e' loca con su tiguere" ("She's crazy about her *tiguere*") and "Ella está pa mi y pa ti no no" ("She's for me and not for you . . ."). In Shakira's version, the hooks are contained in the stanzas beginning "Yo soy loca con mi tigre" ("I'm crazy about my tiger") and "El está por mi y por ti borró" ("He loves me and he's forgotten you").

34

114.    These hooks play a similar function in both songs. They provide a rhythm that drives the songs. The lyrics of the hooks are also similar.

115.    I first compare Arias' hook beginning "She's crazy about her *tiguere*" with Shakira's hook beginning "I'm crazy about my tiger." Arias' hook is:

Ella e' loca con su tiguere
Loca loca loca

(She's crazy about her *tiguere*
Crazy crazy crazy)

Shakira's hook is as follows:

Yo soy loca con mi tigre
Loca loca loca

(I'm crazy about my tiger
Crazy crazy crazy)

116.    The first lines of the two hooks are similar. "Tigre" sounds like *tiguere* and gives no meaning to Shakira's song other than the meaning *tiguere* gies to Arias' song. The change between "she" and "I" is because Shakira's song tells a similar story to Arias', but from a different perspective. These hooks are substantially similar and perform the same functional role in both songs: the rhythm of both hooks drives the songs, gives the songs structure, and makes them catchy.

117.    I next compare the second hooks in the song. Arias' hook is as follows:

Ella está pa mi y pa ti no no
Tú ke da de to' y yo ni un kiki.

(She's for me and not for you no
You give her everything and I not even a dime.)

Shakira's hook is as follows:

El está por mi y por ti borró
Eso que tú tienes to'o y yo ni un kikí.

35

(He loves me and he's forgotten you
Even though you've got it all and I ain't got a dime.)

118. Both hooks use similar words and similar imagery. The first line in both hooks contrasts the singer, who gets the love interest, with another suitor, who does not. The second line contrasts the singer who is poor and does not have (or give to the love interest) a dime with the suitor, who is wealthy and has (or gives to the love interest) everything.

119. The similarities between the first two lines of this hook are even stronger in the original Spanish. The first line of Arias' hook ends with the Spanish words "pa ti no no." This rhythm is echoed in the first line of Shakira's hook, which ends with the Spanish words "por ti borro." As discussed above in ¶ 99, "borro" rhymes with and sounds similar to "no no," and expresses the same concept – total rejection of the wealthy suitor or competitor. The two words play the same role in the lyric when it is sung: they both bring the line to an abrupt, emphatic halt.

120. I find that Shakira's composition illegally copied the hooks, which give the songs structure, from Arias' song, or from Bello's illegal copy of Arias' song.

121. Both songs are also structured around a long verse, which are not similar. However, plagiarism cannot be excused by showing that not everything has been pirated. *See Sheldon,* 81 F.2d at 56. Here, both songs are driven by the hooks and I find that Shakira's version has illegally copied the hooks from Arias' version. Accordingly, I conclude that Shakira's song is an illegal copy of Arias' song.

122. Therefore, I find that Mayimba has established that Sony/ATV Latin and Sony/ATV Discos infringed Mayimba's copyright based on their distribution of Shakira's Spanish language version of Loca.

### G. Mayimba's Claims that Shakira's English Language Version of "Loca" and the Re-

### Mix of Bello's Version of Loca con su Tiguere Infringed Mayimba's Copyright

123.    Mayimba also argues that Shakira's English language version of Loca and the re-mix of Bello's version of Loca con su Tiguere infringe its copyright.  These songs were not offered into evidence, and therefore cannot be the subject of any comparison.

124.    Mayimba nevertheless argues that I should find that these songs infringe Mayimba's copyright in Loca con su Tiguere because these songs are "derivative works."  This argument is unavailing.

125.    The Copyright Act grants the owner of copyright the exclusive right "to prepare derivative works based upon the copyright work."  17 U.S.C. § 106(2).  The Copyright Act defines a "derivative work" as follows:

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101.  Mayimba argues that because the remix of Bello's version of Loca con su Tiguere and Shakira's English language version of Loca are based on infringing works, they are derivative works and therefore infringe Mayimba's copyright.  This is a false syllogism that fails for multiple reasons.

126.    First, I did not hear any evidence establishing that the remix of Bello's version of Loca con su Tiguere and Shakira's English language version of Loca were based on other songs. Mayimba cannot point to a portion of the Sony Defendants' answer that admits this point. Accordingly, the first premise of Mayimba's argument—that the remix and Shakira's English language version of Loca are derivative of other works—assumes evidence that is not in the record.

127.    Second, even assuming that it was undisputed that the remix of Bello's version of Loca con su Tiguere was a "derivative work" based on Bello's version of Loca con su Tiguere, that does not necessarily mean that the remix was "derivative" of Arias' version. The Copyright Act grants copyright holders the exclusive right "to prepare derivative works *based upon the copyrighted work*," 17 U.S.C. § 106(2) (emphasis added), it does not grant them the exclusive right to prepare derivative works based on other works that infringe the copyrighted work. Thus, it is not enough for Mayimba to establish that the remix was derivative of Bello's song. Instead Mayimba must directly show that the remix was a derivative of Arias' song.

128.    The only way for Mayimba to prove that the remix was a derivative of Arias' song would be for Mayimba to prove that the remix illegally copies Arias' song because a substantial similarity exists between the remix and the protectable elements of Arias' song, *i.e.* to prove that the remix infringes its copyright. *See Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 117 (2d Cir. 2003) (applying the substantial similarity test to determine whether an allegedly derivative work infringes copyright);[12] *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (rejecting the argument that a copyright holder, alleging that a the movie *E.T.* was an unlawful derivative work, did not have to establish that the film was substantially similar to the original work and holding that "a work is not derivative unless it has been substantially copied from the prior work"); *Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir. 2003) ("[A] work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work." (quoting 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 3.01 (1991))). Applying the substantial similarity test is necessary because it is possible for a new work to be based on an original work but so transformed, that the new work is not a derivative of, and does not infringe, the original work. *See, e.g., Well-Made Toy Mfg. Corp.*, 354 F.3d at 117 (concluding that because an allegedly

---

[12]    *Well-Made Toys* was abrogated on other grounds by *Reed Elsevier*, 559 U.S. 154. *See Pearson Educ., Inc. v. Frances*, 11 Civ. 6081 (LTS), 2012 WL 1788148, at *2 (S.D.N.Y. May 16, 2012) *reconsideration denied*, 2012 WL 2930218 (S.D.N.Y. July 17, 2012) (recognizing abrogation).

derivative work "sufficiently transformed the expression of the original work," it was not derivative of the original work and did not infringe it).

129.    Mayimba failed to prove that the remixed version of Bello's song was substantially similar to Arias' song. Accordingly, Mayimba's claims based on the remix are dismissed.

130.    Mayimba also failed to prove that Shakira's English language version of Loca was substantially similar to Arias' song. Accordingly, Mayimba's claims based on the song are dismissed.

### H. Mayimba's Motion for a Permanent Injunction is Denied as Premature

131.    At the close of the trial, Mayimba moved for a permanent injunction against the Sony Defendants. That motion is denied as premature. Mayimba's request for a permanent injunction will be addressed in coordination with the damages phase of this trial, because, under the United States Supreme Court's decision in *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006), a copyright holder seeking a permanent injunction under section 502 of the Copyright Act must show that the remedies available at law, such as monetary damages, would be unable to compensate it for the harm it has suffered.

### CONCLUSION

132.    For the foregoing reasons, I find that Mayimba has established that Bello's version of Loca con su Tiguere and Shakira's Spanish version of Loca were unlawful copies of a song to which Mayimba owned the copyright, in violation of the copyright law. Because Sony/ATV Discos distributed Bello's version of Loca con su Tiguere in the United States and Sony/ATV Latin and Sony/ATV Discos distributed Shakira's Spanish version of Loca in the United States, Mayimba has therefore established their liability. Mayimba's claims against SCA, SME, and Sony/ATV Tunes are dismissed based on Mayimba's failure to establish that they distributed the infringing songs. Mayimba's claims based on the remix version of Bello's song and the Shakira's English version of Loca are dismissed based on Mayimba's failure to prove that those

songs are unlawful copies of a song to which Mayimba held a copyright. And Mayimba's motion for a permanent injunction is denied as premature.

133.    The next stage in this case is determining Mayimba's entitlement to damages and an injunction.

134.    The parties are ordered to confer and in a joint document identify agreed and disputed procedures for the next stage of the case. That joint document shall be submitted to the Court by noon on August 29, 2014. I will meet with the parties at a conference at 3.30pm on September 8, 2014 to discuss the next stage of the case.

SO ORDERED.

Dated:      New York, New York
            August 19, 2014

                                        ALVIN K. HELLERSTEIN
                                        United States District Judge

40